UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------------x

ISAAC J. SMITH, individually and on behalf of all
others similarly situated,

                                    Plaintiff,                **CLASS ACTION
                                                              COMPLAINT AND
          – against –                                         <u>JURY DEMAND</u>**

Former Acting DOCCS Commissioner ANTHONY J.                   9:24-cv-1289 (LEK/TWD)
ANNUCCI; Deputy DOCCS Commissioner JEFFREY
MCKOY; Associate Counsel JARROD SANFORD; and
"JOHN/JANE DOES" 1-10,

                                    Defendants.
--------------------------------------------------------------------x

Plaintiff Isaac J. Smith, on behalf of himself and others similarly situated, for  his

Complaint, alleges as follows:

<u>**INTRODUCTION**</u>

1.      On January 19, 2017, Plaintiff Isaac J. Smith was sentenced by the

Honorable Martin Efman to a period of incarceration in New York state prison, in the custody of

DOCCS. Justice Efman also sentenced Mr. Smith to an early-release program administered by

DOCCS which allows incarcerated people to gain early release from prison after completing a

six-month intensive boot-camp program. This early-release program is called the Shock

Incarceration Program ("Shock"). Through Shock, incarcerated people receive substance abuse

treatment, therapy, education, and other reintegration services.

2.      Incarcerated people who complete Shock are released from prison

substantially earlier than those who do not, often years earlier. Mr. Smith was *never* admitted to

Shock and instead served his entire sentence. Mr. Smith, and the class of people he seeks to

represent, was incarcerated for years longer than he would have been if the Shock aspect of his sentence had been honored and carried out.

3.     Mr. Smith's court-ordered sentence included Shock. His sentence did not permit DOCCS to decide whether they qualified for Shock. The sentencing orders in his case stemmed from the statutory scheme: as part of the 2009 Drug Law Reform Act ("DLRA"), the New York state legislature empowered sentencing judges to impose Shock as part of a criminal sentence, and in so doing expressly eliminated DOCCS' discretionary authority to deny this category of individuals admission into the Shock program.

4.     DOCCS officials are legally bound to follow judges' sentencing orders: more than seventy-five years ago, a unanimous Supreme Court held that only the judgment of a court establishes a criminal defendant's sentence, and that the imposition of an extra-judicial sentence violates a defendant's constitutional rights. *Hill v. United States ex rel. Wampler*, 298 U.S. 460 (1936) (Cardozo, J.).

5.     DOCCS officials, however, lawlessly refused to adhere to the legislature's requirement that they must provide Shock when a sentencing court orders it as part of a criminal defendant's sentence.

6.     In denying Mr. Smith admission to Shock, defendants—supervisors at DOCCS—acted pursuant to a policy they had of depriving individuals like plaintiff from Shock where defendants see fit—and regardless of what their sentencing judge ordered.  DOCCS officials maintained an unconstitutional policy of ignoring sentencing judges' requirements to enroll incarcerated people in Shock. Instead, they had a policy of screening and selecting which individuals they will permit to participate in Shock. As Albany Supreme Court Justice Ceresia

stated in granting another incarcerated person's successful Article 78 Petition requiring DOCCS to enroll him in Shock: "Nothing in the Statute permits DOCCS to defy a court order."

7.    Defendants' unlawful decision to bar from Shock those individuals who are judicially sentenced to the Shock program, notwithstanding court orders requiring their enrollment, resulted in the prolonged imprisonment of Mr. Smith, and many others like him

8.    Plaintiff brings this action for a declaratory judgment that the class's rights were violated and for compensatory and punitive damages on behalf of himself and other similarly situated incarcerated people who DOCCS excluded from Shock despite a judicial sentence imposing Shock.

## JURISDICTION AND VENUE

9.    This action arises under the Fourteenth Amendment to the United States Constitution and the Civil Rights Act of 1871, 42 U.S.C. § 1983.

10.    The jurisdiction of this Court is predicated upon 28 U.S.C. §§ 1331, 1343(a) and 2201.

11.    Venue is lodged in this Court pursuant to 28 U.S.C. 1391(b).

## JURY DEMAND

12.    Plaintiff demands trial by jury in this action.

## THE PARTIES

13.    Plaintiff Isaac J. Smith is a resident of New York and a natural person.

14.    Defendant Anthony J. Annucci was the Acting Commissioner of DOCCS at all times relevant to this action. At all times relevant to this action, defendant Annucci was responsible for the policy, practice, supervision, implementation, and conduct of all DOCCS matters and responsible for the appointment, training, supervision, and conduct of all DOCCS

personnel. In addition, Acting Commissioner Annucci was responsible for enforcing the rules of

DOCCS, and for ensuring that DOCCS personnel obey the Constitution and laws of the United

States. Upon information and belief, given the high profile of the changes wrought by the 2009

Drug Law Reform Act (as described below), Annucci (who was Executive Deputy

Commissioner from 2007-2013 and has been Acting Commissioner since 2013), was involved in

creating DOCCS' policies concerning incarcerated people who were judicially sentenced to

Shock. Defendant Annucci was put on notice of DOCCS policies excluding judicially-sentenced

individuals from Shock at the very latest by May 8, 2018, when a formerly incarcerated person

named Michael Matzell sued Mr. Annucci in state court to challenge the denial of Mr. Matzell's

admission to Shock, and yet defendant Annucci still refused to enroll Mr. Smith, and others like

him, in Shock notwithstanding that lawsuit.

15.     Deputy Commissioner Jeffrey McKoy was the Deputy Commissioner of

Program Services for DOCCS at all relevant times.

16.     Defendant Jarrod Sanford is Associate Counsel in the Office of Sentencing

Review at DOCCS. On multiple occasions, including but not limited to November 22, 2017,

defendant Sanford unlawfully instructed DOCCS staff who were responsible for administering

Shock that incarcerated people judicially sentenced to Shock should be disqualified on the basis

of DOCCS' discretionary criteria, such as a disciplinary infraction. Mr. Sanford refused to

change this policy despite receiving notice on multiple occasions that it was unlawful, including

during the period Mr. Smith was overdetained. DOCCS staff specifically relied on Mr. Sanford's

instruction to unlawfully exclude and continue to detain people judicially sentenced to Shock

from the program, including Mr. Smith. Mr. Sanford never investigated or reassessed his

direction, never sought out DOCCS policy documents, never reviewed DOCCS' Shock policy

manuals, and never consulted case law to confirm his policy direction to other DOCCS staff was lawful. Mr. Sanford never revised DOCCS' unlawful policy at least until the Third Department ruled in Mr. Matzell's favor in 2019. Mr. Sanford is one of the defendants listed as a Doe Defendant in the original complaint filed by Michael Matzell, who "implemented, enforced, perpetuated and/or allowed the policy of excluding people judicially sentenced to Shock." *See* No. 20 Civ. 1605 (N.D.N.Y.), Dkt.1 ¶ 21.

17.    At all relevant times, defendants "John/Jane Does 1-10" were training, supervisory, and policy making personnel within DOCCS who implemented, enforced, perpetuated and/or allowed the policy of excluding people judicially sentenced to Shock that is the subject of this action, acting in their capacity of agents, servants, and employees of defendants and within the scope of their employment as such. Plaintiff is unable to determine the names of these DOCCS supervisory defendants at this time and thus sues them under a fictitious designation. All are sued in their individual capacities.

18.    During all times mentioned in this complaint, defendants, separately, and in concert, engaged in acts and/or omissions which constituted deprivations of plaintiff's constitutional rights, and the privileges and immunities of the plaintiff, and while these acts were carried out under color of law, they had no justification or excuse, and were instead gratuitous, illegal, and improper. Defendants are all being sued in their individual capacities.

## CLASS ACTION ALLEGATIONS

19.    Plaintiff brings this case as a class action under Fed. R. Civ. P. 23(b)(3) on behalf of all persons whose criminal sentence in New York State included a Judicial Shock Order pursuant to Penal Law § 60.04(7), but whom DOCCS nevertheless excluded or will exclude from Shock.

20.     This case is appropriate for treatment as a damages class action under Rule 23(b)(3) because common issues predominate over individual issues and a class action resolving the claims of this putative damages class is superior to any other method of fair and efficient adjudication.

21.     Public records requests indicate that since the Drug Law Reform Act of 2009 was passed (as detailed below), DOCCS screened out and deprived over 300 people of Shock who were court-ordered to be enrolled in Shock. The class is so numerous that joinder is impracticable.

22.     On information and belief, joinder also is impracticable because many members of the class are incarcerated, recently incarcerated, low-income persons, may not speak English, or likely would have great difficulty in pursuing their rights individually.

23.     The questions of law and fact presented by plaintiff's claims are common to the absent Class members who plaintiff seeks to represent. Among others, the questions of law and fact common to the Class are: (i) whether defendants excluded incarcerated people from Shock despite Court orders requiring their enrollment; (ii) whether excluding eligible incarcerated people from Shock violates due process; (iii) the degree of involvement of supervisors in DOCCS in the creation of the Shock policy; (iv) whether defendants' actions were sufficiently wanton as to warrant the imposition of punitive damages; and (v) whether defendants are immune from suit.

24.     Common issues of law and fact such as those set forth above (and many others) predominate over any individual issues.

25.     The Shock policy has resulted in the wrongful detention and confinement of, and the infliction of injuries upon, plaintiff and the Class. The claims alleged and the practices challenged in this complaint are common to all members of the Class.

26.     The violations suffered by plaintiff Smith are typical of those suffered by the Class. The entire Class will benefit from the relief sought.

27.     Plaintiff Smith has no conflicts of interest with Class members and will fairly and adequately protect the interests of the class. Counsel competent and experienced in federal class actions, federal civil rights litigation, and criminal defense has been retained to represent the Class. Emery Celli Brinckerhoff Abady Ward & Maazel LLP, a law firm with offices in New York City, has extensive experience in civil rights litigation and as class counsel in numerous lawsuits against state and local governments.

28.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy because: (a) the prosecution of separate actions would be inefficient and wasteful of legal resources; (b) the members of the Class are scattered throughout New York State and are not likely to be able to vindicate and enforce their Constitutional rights unless this action is maintained as a class action; (c) the issues raised can be more fairly and efficiently resolved in the context of a single class action than piecemeal in many separate actions; (d) the resolution of litigation in a single forum will avoid the danger and resultant confusion of possible inconsistent determinations; (e) the prosecution of separate actions would create the risk of inconsistent or varying adjudications with respect to individuals pursuing claims against defendants which would establish incompatible standards of conduct for defendants; (f) defendants have acted on grounds applicable to all Class members, making relief on behalf of all members necessary and appropriate; and (g) questions of law and/or fact

common to members of the Class, especially on issues of liability predominate over any

question, such as that of individual damages, that affect individual members.

29.    There will be no extraordinary difficulty in the management of the class

action.

## **FACTS**

30.    The United States Constitution prohibits public officials, such as the

Commissioner of the State DOCCS or any of his subordinates, from prolonging an incarcerated

person's period of incarceration when the sentencing court has authorized that person's release.

31.    Defendants may not use discretionary determinations to exclude

incarcerated people from Shock where the sentencing court has ordered the person to enroll in

Shock.

32.    Defendants' policy, practice, and custom of excluding court-ordered

Shock participants from Shock has been promulgated, effectuated, and/or enforced in bad faith

and contrary to clearly established law.

33.    In 1936, a unanimous Supreme Court held that the judgment of a court

establishes a defendant's sentence, and that an administrator altering that sentence violates a

defendant's constitutional rights. *Hill v. United States ex rel. Wampler*, 298 U.S. 460 (1936)

(Cardozo, J.). "The only sentence known to the law is the sentence or judgment entered upon the

records of the court." *Id.* at 464. The Second Circuit has more recently reiterated reaffirmed that

"The only cognizable sentence is the one imposed by the judge. Any alteration to that sentence,

unless made by a judge in a subsequent proceeding, is of no effect." *Earley v. Murray*, 451 F.3d

71, 75 (2d Cir. 2006).

**Court-Ordered Participation Shock Program**

34.    Shock is a six-month boot-camp style program in which incarcerated people are subject to "a highly structured routine of discipline, intensive regimentation, exercise and work therapy, together with substance abuse workshops, education, prerelease counseling, and self-improvement counseling." 7 NYCRR § 1800.2.

35.    Prior to 2009, DOCCS was afforded broad discretion and authority to screen and admit individuals to Shock or exclude them from Shock (*see* Correction Law § 867 [1]).

36.    In 2009, however, the New York State Legislature passed the Drug Law Reform Act of 2009 (L 2009, ch 56, as codified in CPL 440.46 "DLRA") to "grant relief from what the Legislature perceived as the inordinately harsh punishment for low level non-violent drug offenders that the Rockefeller Drug Laws required." *People v. Brown*, 25 N.Y.3d 247, 251 (2015) (internal quotation marks and citations omitted).

37.    The DLRA expanded judicial discretion and made it possible for *judges* to offer court-mandated treatment substance abuse treatment to certain addicted non-violent offenders, without the approval of prosecutors.[1]

38.    The 2009 DLRA amended Penal Law § 60.04 (7), to provide that a sentencing court "may issue an order directing that [DOCCS] enroll the defendant in the shock incarceration program . . . provided that the defendant is an eligible inmate, as described in [Correction Law § 865(1)]."

---

[1] https://www.vera.org/publications/end-of-an-era-the-impact-of-drug-law-reform-in-new-york-city.  It was widely reported and discussed in criminal justice circles in 2009 when the Rockefeller Drug Law Reforms expanded eligibility for Shock to allow for judges to sentence defendants to Shock.  "Reforms effective in April 2009 also expanded eligibility for participation in the Shock Incarceration Program and the Willard Drug Treatment Campus." Leslie Kellam and Leigh Bates, 2009 Drug Law Changes 2014 Update, Drug Law Series Report No. 5, Division of Criminal Justice Services Criminal Justice Update (May 2014).

39.    The 2009 statutory change to allow judges to sentence people to Shock ("Judicial Shock Orders") was a significant and widely reported element of the DLRA reforms, whose overarching purpose was to create "expanded eligibility for participants in Shock."[2]

40.    Until the 2009 amendments, eligibility for Shock was determined only by DOCCS after reception at a facility, and decisions regarding placement in Shock were solely the province of DOCCS. Judges had no authority to order an incarcerated person to be placed in the program. DLRA made several significant changes to Shock including that sentencing judges were now authorized to order Shock placement for those eligible.

41.    The creation of the Judicial Shock Orders was intended to provide the sentencing judge with greater authority to order Shock, and return the discretionary determination of who went to Shock back to the sentencing judge, or as the New York Times Editorial page put it in February 2009, to achieve "a full restoration of judicial discretion."[3]

42.    The changes to Shock wrought by the DLRA were so significant that DOCCS itself issued an analysis to explain the new reforms, including the new tool of the Judicial Shock Order, noting: "The DLR[A] also permits the sentencing court to order DOCCS to enroll a drug defendant into the Shock Incarceration Program when the defendant meets the legal requirements."[4]

43.    In addition to the media and DOCCS itself, public defender organizations, criminal justice groups, and other stakeholders all widely discussed the impact of the newly available Judicial Shock Orders as a mechanism to cabin prosecutorial and DOCCS' discretion regarding who could participate in Shock. Judges could now sentence defendants to Shock. This

---

[2] https://www.criminaljustice.ny.gov/drug-law-reform/documents/dlr-update-report-may-2014.pdf

[3] https://www.nytimes.com/2009/02/09/opinion/09mon3.html

[4] https://doccs.ny.gov/system/files/documents/2019/09/DrugLawReformShock.pdf

was a significant development to expand Shock eligibility.[5] Individuals who were eligible for Shock pursuant to Correction Law § 865(1) who receive a Judicial Shock Order could no longer be screened out of Shock participation by a Shock Screening Committee or other DOCCS process.[6]

44.    Under Correction Law § 865(1), an "eligible inmate" is one who is eligible for release (on parole or conditional release) within three years, less than fifty years old, and who has never been connected of a violent felony. Penal Law § 60.04 (7), further provides that "any defendant to be enrolled in such program pursuant to this subdivision shall be governed by the same rules and regulations promulgated by [DOCCS], including without limitation those rules and regulations establishing requirements for completion and . . . governing discipline and removal from the program." Penal Law § 60.04 (7), as amended by L 2009, ch 56.

45.    Correction Law § 867(2-a) requires that "an inmate sentenced to shock incarceration shall promptly commence participation in the program."

46.    Since 2009, state prison officials may only screen incarcerated people that have been *judicially sentenced* to Shock when the prisoner has a "medical or mental health condition" that would prevent him from successfully completing the program.

47.    Even if an incarcerated person cannot participate in Shock due to a medical/mental health condition, DOCCS is still required to adhere to the court-ordered sentence. It must provide a "alternative-to-shock-incarceration program," and if the incarcerated person objects to that alternative, notify the court to permit the court to modify its sentencing order, per Penal Law § 60.04 (7) (b).

---

[5] https://cdn.ymaws.com/www.nysda.org/resource/resmgr/PDF-The_Report/09-NYSDA_Report-Mar-May.pdf; https://nysba.org/NYSBA/Meetings%20Department/Section%20Meetings/Criminal%20Justice/Spring2017Book/Final%20Book%20CRIMSP17%20.pdf

[6] https://www.nycla.org/pdf/Crim%20Tri%20Adv%20Book%20(F).pdf

48.     In sum, since 2009, where a sentencing court ordered DOCCS to enroll an incarcerated person in Shock as part of his or her sentence, DOCCS had no discretion or authority to screen and refuse to enroll the person unless DOCCS determined only that the person to be enrolled in Shock had a medical or mental health condition that would prevent him or her from completing the program.

49.     The New York courts have made clear that DOCCS officials unmistakably lack the authority to deny statutorily eligible defendants from enrolling in the program, stating: "Where a court sentences an inmate to the [Shock] program, DOCCS is limited to determining only whether a judicially sentenced [S]hock incarceration inmate 'has a medical or mental health condition that [would] render the inmate unable to successfully complete the . . . program.'" *Matzell v. Annucci*, 183 A.D.3d 1, 121 N.Y.S.3d 153 (App. Div. 3d Dep't 2020) (quoting Correction Law § 867(2-a)).

50.     The 2009 statutory amendment eliminated DOCCS' discretion to deny enrollment in Shock in the face of a judicial sentence, yet DOCCS repeatedly persisted in asserting its "authority" to screen and bar Mr. Matzell, Mr. Smith, and the putative Class members from admission to Shock for statutorily invalid reasons.[7]

51.     In ignoring the applicability, requirements, and limitations of Correction Law § 867(2-a) to plaintiff's sentences, defendants flouted the New York State Legislature's express purpose of amending the law to limit DOCCS' discretion to restrict access to Shock and expand the judiciary's ability to order enrollment in Shock as part of a sentence. *See* L. 2009, c.56, pt. AAA, § 2, eff. April 7, 2009 ("DLRA").

---

[7] Incarcerated people who are screened for enrollment in Shock and who have *not* been judicially sentenced to enroll in the program are evaluated under different criteria, specifically whether the person's participation would be "consistent with the safety of the community, the welfare of the applicant and the rules and regulations of the department." Correction Law § 867 (2).

52.    DOCCS officials have made clear that what happened to the named plaintiff is consistent with DOCCS policies in every case: "it is the Department's position that the latter part of Penal Law § 60.04(7)(a) grants the department the authority to consider an inmate's disciplinary record and/or infractions accrued while awaiting enrollment in the Shock Incarceration Program in determining whether or not an inmate will in fact be enrolled in the program.  This is the case regardless of whether or not participation in the program is court ordered."  Letter from defendant Jarrod Sanford, Assistant Counsel at the DOCCS Office of Sentencing Review, March 16, 2018.

53.    DOCCS has used a list of what it deemed Shock "General Confinement Statutory Criteria" which did not comply with the statute's actual "statutory criteria."  Defendant Annucci submitted this list to the state court in July 2018 in opposing Mr. Matzell's Article 78 Petition, and the form Annucci submitted states that it was last revised January 7, 2011. Those criteria state: "**EXCLUDE** offenses due to specific disciplinary reasons," and "**EXCLUDE** offenders serving administrative segregations," among other exclusion criteria.

54.    On November 17, 2017, defendant Sanford issued a policy direction to DOCCS employees administering the Shock program stating that "DOCCS' rules and regulations apply to Shock inmates regardless of whether their placement in the program results from a court order or this Department's discretion" and if a disciplinary "infraction bars an inmate from Shock, such bar would apply" to an individual who was judicially sentenced to Shock.

55.    DOCCS had no lawful authority to promulgate exclusion criteria for court-ordered Shock, other than the statutory ineligibility criteria.

56.     Not only is defendants' policy unlawful, it is also illogical and cruel. DOCCS barred Mr. Smith from enrolling in a substance abuse treatment program because Mr. Smith incurred a ticket related to suspected drug possession. By denying Mr. Smith access to treatment on the grounds that he had a substance abuse problem—the very condition they were attempting to treat—DOCCS created a nightmarish Catch-22.

57.     In flat defiance of clear constitutional and statutory commands, defendants have promulgated, implemented, enforced, and/or failed to rectify a policy, practice, and custom of excluding eligible incarcerated persons from a court-ordered Shock program without authorization from the sentencing court and in excess of their express statutory authority.

58.     Upon information and belief, as of late 2020, Prisoners Legal Services of New York was still receiving complaints from individuals who received Judicial Shock Orders that DOCCS was denying them admission to Shock on the grounds of prison misbehavior. At least one of these denials by DOCCS occurred as recently as October 2020.

59.     Each member of the Class, including plaintiff Smith, were victims of defendants' policy or practice.

60.     As a direct result of the unlawful exclusion from court-ordered Shock, each member of the Class has suffered or will suffer actual damages in forms involving, without limitation, loss of liberty, mental anguish, and pain and suffering.

**Plaintiff Smith**

61.     Plaintiff Isaac Smith's experience is representative of those of the putative Class.

62.     On January 19, 2017, following Mr. Smith's conviction for criminal possession of a controlled substance in the second degree, the Honorable Martin Efman of the

Suffolk County Court sentenced Mr. Smith to a determinate term of three years in prison followed by three years of post-release supervision.

63.    Justice Efman also ordered Mr. Smith to enroll in the Shock Incarceration Program pursuant to Penal Law § 60.04(7), stating in the sentence and commitment order: "SHOCK INCARCERATION Ordered [PL 60.04(7)]" (bracketed text in original).

64.    In determining Mr. Smith's sentence, Justice Efman intended for Mr. Smith to participate in Shock and to be rendered automatically eligible for early conditional release upon his successful completion of Shock. Shock was not only mandated by Justice Efman, it was also a critical opportunity for Mr. Smith to obtain therapeutic and rehabilitative services and reenter society with improved skills.

65.    Following his arrest and conviction, Mr. Smith entered DOCCS custody to begin serving his sentence.

66.    While he was incarcerated at the DOCCS reception center at Downstate Correctional Facility, Mr. Smith received a disciplinary ticket for drug possession.

67.    Mr. Smith was eventually transferred to Greene Correctional Facility.

68.    Once there, he advised his counselor he was judicially sentenced to Shock.

69.    Mr. Smith was seeking to enroll in Shock to comply with his judicial sentence. As such, DOCCS was without discretion or authority to screen him and deny him admission to Shock for all but the limited statutory grounds of medical or mental health issues, neither of which applied to him.

70.    During his period of incarceration, Mr. Smith had no medical or mental health conditions that would prevent him from successfully completing Shock.

71.     Mr. Smith's girlfriend also called the facility to explain that he was supposed to go to Shock.

72.     The counselor advised Mr. Smith that he would go to Shock.

73.     During his incarceration at the facility, Mr. Smith observed other individuals who were Shock eligible being interviewed for enrollment into Shock. Mr. Smith asked his counselor why he was not included.

74.     Mr. Smith then spoke to a senior counselor, who showed him a computer screen that said he was denied for disciplinary reasons.

75.     Mr. Smith was never admitted to Shock and served his entire sentence.

76.     Mr. Smith never received any of the therapeutic or rehabilitative programming required by his Shock sentence.

77.     Upon information and belief, DOCCS' unlawful Shock exclusion policy caused Mr. Smith to spend at least two years—*more than 700 days*—in prison beyond his lawful judicial sentence.

78.     The policy articulated in Mr. Sanford's November 22, 2017 email was in place and enforced for nearly the entire period of time Mr. Smith was detained beyond his lawful sentence.

79.     During the period Mr. Smith was overdetained, DOCCS officials, including Mr. Sanford, were repeatedly put on notice that their policy of screening out individuals judicially-sentenced to Shock from the program for disciplinary infractions was unlawful.

80.     On February 27, 2018, Michael Matzell's counsel sent a letter to DOCCS Deputy Commissioner and Counsel Kevin Bruen, also received by defendant Sanford,

articulating the statutory bases that mandated Mr. Matzell's admission to Shock and asking for a clear statement of the Department's position and legal basis for excluding Mr. Matzell on account of alleged drug-related disciplinary infractions. Despite Mr. Matzell's counsel's letter, defendant Sanford took no steps to investigate whether the Shock exclusion policy was lawful or whether Mr. Smith's ongoing confinement was lawful. He did not review any DOCCS policy documents or review any case law.

81.     On March 16, 2018, defendant Sanford replied to Mr. Matzell's counsel on behalf of DOCCS, claiming DOCCS had "authority to consider an inmate's disciplinary record and/or infractions accrued while awaiting enrollment in the Shock Incarceration Program in determining whether or not an inmate will in fact be enrolled in" Shock "regardless of whether or not participation in the program is court ordered."

82.     At no point during Mr. Smith's overdetention did Mr. Sanford take any steps to determine or confirm whether Mr. Smith's Shock exclusion was lawful.

83.     On March 7, 2019, well after Mr. Smith should have been enrolled in Shock but before he was released from custody, the Honorable Justice Andrew G. Ceresia of the Albany Supreme Court issued an Order and Judgment in favor of Michael Matzell in an Article 78 case he had commenced, stating "the controlling statutes do not permit DOCCS to administratively bar an inmate from entering the shock program when shock has been judicially ordered.  To do so constitutes an administrative alteration of a sentence, which is not permitted."

84.     Justice Ceresia rejected DOCCS' position that it "still retains discretion to bar even judicially-sentenced shock inmates from participation in the program."[8]

_____

[8] Specifically, Justice Ceresia rejected DOCCS' interpretation of Penal Law § 60.04(7)(a).  DOCCS argued that the phrase "to be enrolled" as found in Penal Law § 60.04(7)(a) refers to incarcerated persons who have yet to begin Shock, allowing DOCCS to apply its own rules and regulations to preclude those individuals from enrolling in Shock.  Justice Ceresia disagreed, stating that, "[t]he full sentence [in this

85. Justice Ceresia held that Annucci was under a "clear statutory mandate" to enroll Mr. Matzell in Shock, and that "[n]othing in the statute permits DOCCS to defy a court order."

86. Justice Ceresia instructed defendant Annucci to enroll Mr. Matzell in Shock within 30 days of the entry of its Order and Judgment, provided that Mr. Matzell was not statutorily ineligible pursuant to Correction Law § 865(1) or § 867(2-a).

87. The Supreme Court Appellate Division Third Department, on May 31, 2019, granted Mr. Matzell's motion and vacated the automatic stay of Justice Ceresia's decision. Later, the Third Department affirmed the Supreme Court's decision.

88. In light of these judicial proceedings, Defendants were on additional notice that Mr. Smith's Shock exclusion was unlawful, but they took no steps to release him.

89. As a direct and proximate result of defendants' unlawful exclusion of Mr. Smith from Shock and the unlawful period of imprisonment as a result, Mr. Smith has suffered and continues to suffer loss of liberty, psychological pain, suffering, and mental anguish.

## FIRST CAUSE OF ACTION
42 U.S.C. § 1983; Fourteenth Amendment

90. Plaintiff repeats and reallege the foregoing paragraphs as if the same were fully set forth at length herein.

91. By implementing, promulgating, enforcing and/or effectuating a policy, practice, and custom pursuant to which the named plaintiff and other members of the plaintiff Class were or will excluded from Shock despite being court ordered to enroll in Shock, where such exclusion is not based on compliance with the statute's delineated process for screening

---

section] refers to any defendant who is 'to be enrolled' in shock because a court has already *ordered* DOCCS to do so" (emphasis in original).

incarcerated persons from Shock, or by failing to intervene to correct this unconstitutional policy, practice, and custom despite being on notice of the same, defendants have deprived plaintiff and members of the plaintiff class of rights, remedies, privileges, and immunities guaranteed to every citizen of the United States, in violation of 42 U.S.C. § 1983, and of rights guaranteed by the Fourteenth Amendment of the United States Constitution. Defendants also conspired among themselves to do so (taking numerous overt steps in furtherance thereof), and/or failed to prevent one another from doing so.

92.    Defendants acted under pretense and color of state law and within the scope of their employment.

93.    Defendants acted beyond the scope of their jurisdiction, without authority of law, and abused their powers.

94.    Defendants acted willfully, knowingly, and with the specific intent to deprive plaintiff and members of the plaintiff Class of their constitutional rights secured by 42 U.S.C. § 1983 and by the Fourteenth Amendment to the United States Constitution.

95.    As a direct and proximate result of the misconduct and abuse of authority detailed above, plaintiff and members of the plaintiff Class suffered and continue to suffer the damages hereinbefore alleged.

## RELIEF REQUESTED

WHEREFORE, plaintiff and members of the putative Class request the following relief:

1.    A judgment declaring that defendants have committed the violations of law alleged in this action;

2.    Compensatory damages against all defendants in an amount to be proven
      at trial;

3.    Punitive damages against all defendants in an amount to be proven at trial;

4.    An order awarding disbursements, costs, and attorneys' fees; and

5.    Such other and further relief that may be just and proper.


Dated: October 21, 2024
       New York, New York

                                    EMERY CELLI BRINCKERHOFF ABADY
                                    WARD & MAAZEL LLP


                                    By:    /s/ Katherine Rosenfeld
                                           Katherine Rosenfeld
                                           Debra L. Greenberger
                                           Vivake Prasad

                                    600 Fifth Avenue, 10th Floor
                                    New York, NY 10020
                                    (212) 763-5000

                                    krosenfeld@ecbawm.com
                                    dgreenberger@ecbawm.com
                                    vprasad@ecbawm.com

                                    *Attorneys for Plaintiff*